**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

SOLOMON PACHTINGER,

        Petitioner,

    v.

WARDEN JEFF GRONDOLSKY,

        Respondent.

Civil No.: 08-4169 (NLH)

**O P I N I O N**

**APPEARANCES:**

    SOLOMON PACHTINGER, Petitioner Pro Se
    #53151-054
    F.C.I. Fort Dix - West
    Unit 5812, P.O. Box 7000
    Fort Dix, NJ 08640

    JAMES B. CLARK, III, AUSA
    OFFICE OF THE U.S. ATTORNEY
    970 Broad Street, Suite 700
    Newark, New Jersey 07102
    Counsel for Respondent

**HILLMAN**, District Judge

On or about August 20, 2008, petitioner, Solomon Pachtinger ("Pachtinger"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges a prison disciplinary proceeding.  Pachtinger asks the Court to expunge the disciplinary finding and sanctions imposed against him.  The named respondent is FCI Fort Dix Warden Jeff Grondolsky.  Respondent Grondolsky answered the petition on October 27, 2008,

and provided a copy of the pertinent administrative record. (Docket Entry No. 4).[1]  Pachtinger filed a traverse or objections to the Warden's answer and motion to dismiss on November 12, 2008 and November 25, 2008, respectively.

## I. BACKGROUND

Pachtinger challenges a December 4, 2007 prison disciplinary finding, which resulted in the loss of 27 days good conduct time ("GCT"), 21 days in disciplinary detention, and three months loss of visitation.  He seeks to have the incident report and disciplinary finding expunged, and to restore the 27 days loss of GCT.

Pachtinger is presently serving a 57-month prison sentence imposed by the United States District Court for the District of New Jersey, on January 9, 2007, for his conviction on charges of bank fraud, possession of counterfeit securities and wire fraud. His projected release date is August 12, 2009, assuming he earns all GCT available to him.

---

[1]  On October 30, 2008, Pachtinger moved for summary judgment on the apparent believe that Respondent had failed to file a timely answer.  (Docket Entry No. 5).  On November 5, 2008, Warden Grondolsky filed an opposition to Pachtinger's motion for summary judgment.  After Petitioner acknowledged that the answer was timely filed, this Court denied his motion by Order entered on April 6, 2009.

2

The incident at issue in this habeas petition occurred while Pachtinger was confined at FCI Otisville.[2]  The Incident Report, number 1663186, states that, on November 3, 2007, at about 10:00 a.m., the reporting officer, Senior Officer Specialist R. Seigerman, was conducting rounds and observed Pachtinger lying with another inmate on the top bunk in his cell with a sheet up to his neck and his arms spread out at his sides. Seigerman reported that the other inmate was positioned at petitioner's groin level in the fetal position.  When asked what the inmates were doing, both responded that they were "pranking."

Pachtinger was charged with a rules violation, namely, Code 205 violation, engaging in a sexual act.  He was taken to the Special Housing Unit ("SHU") where he was strip searched and subjected to a medical inspection.  An incident report was prepared that same day and provided to Pachtinger on November 4, 2007.  Seigerman also prepared a memorandum of the incident on November 3, 2007, which was relied upon at the disciplinary hearing.

On November 6, 2007, Pachtinger appeared before the Unit Disciplinary Committee ("UDC") for a hearing.  Based on the seriousness of the charge and potential sanctions, the matter was

---

[2] Pachtinger was transferred to FCI Fort Dix, where he currently is confined, on January 15, 2008.

referred to the Disciplinary Hearing Officer ("DHO") for a hearing.

On November 8, 2007, the DHO, Officer J.M. Banks, conducted a hearing with petitioner present. Pachtinger was represented by the institution's chaplain, Rabbi Laskin. The DHO report contains a summary of Pachtinger's statement as follows:

> Around 9:30 a.m., I came back from the Chapel and went to my room. I climbed into bed and my bunky, who tends to be juvenile, asked me if I was going to bed. He said he wasn't and climbed up on the stool and table. He was trying to pull me off and I started jostling around with him. The officer came by and asked what we were doing. Boutilier told her we were pranking around. When she came back around she asked again and Boutilier told her pranking around. They took me to the Lieutenant's Office and the Lieutenant asked me what we were doing and I told him nothing. The way she described it isn't logical. If one would accept her version of him being under the covers, What shows a sexual act? I don't know what her motivation would be. I don't do those kind of things. I had a problem with another celly who wrote on the mirror "Princess and I'm your daddy." I reported this. I was examined by the P.A. and he didn't find any evidence to a sex act. I would like the camera to be reviewed to show this didn't happen.

(DHO Report at Section III.B, Attachment B to Declaration of Tara Moran ("Moran Decl.")).

No witnesses appeared at the DHO hearing, although Pachtinger requested that his cell mate, Inmate Boutilier, be called for testimony. The DHO denied this request because Inmate Boutilier had already denied participating in a sex act and his presence at the hearing wasn't necessary because his testimony would be the same. (DHO Report at Section III.C.3).

The DHO relied on Pachtinger's statement, the Incident Report and Investigation, and Officer Seigerman's Memorandum dated November 3, 2007, in rendering his decision. On December 4, 2007, the DHO issued his findings with respect to the November 3, 2007 incident. Specifically, the DHO found as follows:

> The DHO finds on November 3, 2007, your [sic] participated in conduct that is disruptive or interferes with the orderly running of the institution most like being engaged in a sexual act.
>
> Specific evidence relied on to support this finding is the incident report written by Officer Seigerman. She states on October [sic] 3, 2007, at approximately 10:00 a.m., she was conducting the count on the 100 Range of Unit GB. Upon reaching your cell, #119, she observed you lying on the top bunk under the sheet with your arms spread out to the sides. Inmate Boutilier was in a fetal position near your groin. In her memorandum, Officer Seigerman further stated Boutilier's head popped up when he heard her. He attempted to get up, but your legs were wrapped around his mid-section. Boutilier removed your legs from his mid-section and stood up. Officer Seigerman noted Boutilier's face was flushed and she asked what the two of you were doing. You both stated it was a prank. You offered the following defense: Around 9:30 a.m., I came back from the Chapel and went to my room. I climbed into bed and my bunky, who tends to be juvenile, asked me if I was going to bed. He said he wasn't and climbed up on the stool and table. He was trying to pull me off and I started jostling around with him. The officer came by and asked what we were doing. Boutilier told her we were pranking around. When she came back around she asked again and Boutilier told her pranking around. They took me to the Lieutenant's Office and the Lieutenant asked me what we were doing and I told him nothing. The way she described it isn't logical. If one would accept her version of him being under the covers, What shows a sexual act? I don't know what her motivation would be. I don't do those kind of things. I had a problem with another celly who wrote on the mirror "Princess and I'm your daddy." I reported this. I was examined by the P.A. and he didn't find any evidence to a sex act. I would like the camera to be reviewed to show this didn't happen. Your requested the camera to be reviewed. The DHO explain [sic] and you agreed

5

>   that this happened in your cell and your cell didn't have a
>   camera inside.  The DHO asked if inmate Boutilier was under
>   the sheet with you.  You said he was, but not like she
>   claimed.  You quickly tried to correct yourself and said it
>   was mostly his arms under the sheets.
>
>   Based on the incident report, supporting documentation and
>   your statement, the DHO has given greater weight to the
>   written report from the officer.  She documented that she
>   witnessed this and she would have nothing to gain by not
>   being truthful.  In fact, she has a responsibility to do so.
>   You would have much to gain by having this incident report
>   expunged.  Additionally, your statement helps to support the
>   facts in her report stating he was under the sheets with
>   you.  You and your staff representative made a good point
>   that the incident report doesn't detail you actually engaged
>   in a sexual act although this may be a reasonable inference
>   when two men are in bed together, under the sheets together
>   and positioned as she described, especially in a
>   correctional setting.  It is based on this the DHO informed
>   you he would be considering code 299.  As indicated, two men
>   in bed together, under a sheet and positioned as described
>   is disruptive to the security and orderly running of the
>   institution.  It is prohibited and could lead to other acts
>   of misconduct as it could also be perceived as a sex act by
>   other inmates and could cause problems between you,
>   Boutilier and or other inmates.  The DHO finds you have
>   committed Prohibited Act 299 - Conduct which Disrupts or
>   Interferes with the Orderly Running of the Institution Most
>   like Code 205 - Engaging in a Sexual Act.

(DHO Report at Section V).

The DHO imposed sanctions including, 21 days disciplinary segregation, three months loss of visitation privileges and disallowance of 27 days GCT.  (DHO Report at Section VI).  The DHO gave the following reasons for the action taken:

>   Conduct which Disrupts or Interferes with the Orderly
>   Running of the Institution Most Like Engaging in a Sexual
>   Act within a Bureau of Prisons' facility will not be
>   tolerated.  It shows a lack of respect for the rules,
>   regulations and can lead to other acts of misconduct,
>   thereby, jeopardizing the security and orderly running of
>   the institution.

(DHO Report at Section VII).  Pachtinger received a copy of the DHO Report on December 5, 2007.

Pachtinger filed an administrative appeal from the DHO decision on or about December 20, 2007.  (Moran Decl. at Attachment C, Regional Administrative Remedy Appeal No. 477307-R2).  The appeal was denied in a response from the Regional Director, D. Scott Dodrill, on February 7, 2008.  The Regional Director found that the record showed substantial compliance with the Program Statement on Inmate Discipline and that the DHO's decision was based on the greater weight of evidence.  (Id.).

Pachtinger promptly filed a Central Office Administrative Remedy Appeal.  The Administrator of National Inmate Appeals likewise supported the DHO's findings and the sanctions imposed in a response dated April 3, 2008.  (Moran Decl. at Attachment D, Central Office Remedy Appeal No. 477307-A1 and Response).

Thereafter, on or about August 20, 2008, Pachtinger filed this § 2241 habeas petition.  Respondent admits that Pachtinger has exhausted his administrative remedies before bringing this habeas action.

## II.   CLAIMS PRESENTED

Pachtinger claims that he was denied procedural due process in violation of the Fifth Amendment.  Specifically, he alleges (1) that he was denied the opportunity to present witnesses in his defense, namely, Inmate Boutilier; (2) that he was not

provided a copy of Officer Seigerman's November 3, 2007 memorandum relied upon by the DHO; (3) that the DHO afforded unreasonable weight to the claims of the reporting officer, which Pachtinger alleges are factually unsupportable; and (4) that the DHO was not an impartial tribunal because he presumed the reporting officer to be more credible than Pachtinger.

Pachtinger also suggests that the disciplinary action taken was fabricated and retaliatory, intended to punish Pachtinger for complaining about an earlier incident that had interfered with his right to free exercise of religion, as guaranteed under the First Amendment. Specifically, Pachtinger alleges that, on or about September 27, 2007, he was participating in group prayers during Sukkot (Sabbath) when correctional officer, Ms. Liptock, "conducted an unannounced shakedown of the group." (Petition at ¶ 10). Pachtinger lodged a complaint against Liptock with her superior Captain White, and she was disciplined accordingly. Soon afterwards, Pachtinger heard rumors that he would suffer retaliation for complaining. (Id.).

Respondents contend that there was no deprivation of due process and that there was sufficient evidence to support the disciplinary sanctions imposed.

III. DISCUSSION

A. Standard of Review

Pachtinger seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[3]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

---

[3] United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

B.  Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because the charge was designated as a "High" category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the

DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  Merits of Petitioner's Claims

1.  *There Was No Denial of Procedural Due Process*

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S.

11

CONST. amend. XIV.  In Wolff v. McDonnell, supra, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72).  However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

   Here, Pachtinger makes several arguments concerning denial of due process.  First, he contends that he was placed in disciplinary detention before receiving the incident report.

Next, he argues that he was not allowed to call Inmate Boutilier as a witness at his DHO hearing. Further, he was never given the opportunity to review Seigerman's memorandum of the incident, and the DHO ignored available surveillance videotapes concerning Pachtinger's movements on the morning of November 3, 2007. Finally, Pachtinger claims that the DHO was biased because he accorded more weight and credibility to the reporting officer than to petitioner. This Court finds all of petitioner's claims to be meritless.

First, this Court notes that the procedures set forth in Wolff and Von Kahl, were followed in all respects. Pachtinger was provided with advance written notice of the charge against him, giving him sufficient time to prepare a defense for an appearance at the disciplinary hearing, call witnesses and present evidence. He also received a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary sanctions. See Wolff, 418 U.S. at 563-71. Thus, the record does not support any claim that Pachtinger was denied due process.

Second, there is no merit to Pachtinger's claims that he could not call a witness, that he was not permitted to review Seigerman's memorandum of the incident, and that the DHO ignored surveillance videotapes. The DHO clearly states in his report that petitioner's proposed witness, Inmate Boutilier, was not

13

necessary because the inmate's denial of engaging in a sexual act was accepted by petitioner and the DHO, and therefore, Boutilier's testimony would not add anything to the hearing to benefit Pachtinger.

The DHO also observed in the report that there were no video cameras inside Pachtinger's cell that would have shown petitioner and Boutilier.  Thus, there was no relevant video surveillance tapes, and Pachtinger conceded this point as well at the DHO hearing.  (DHO Report at Section V).  As to Seigerman's memorandum, it was a short summary of the incident by Seigerman, the reporting officer, which does not differ in any substantial or relevant way from the Incident Report itself.  Consequently, Pachtinger was not deprived of any information, documentation or witnesses that would have aided his defense.

Finally, there is no merit to Pachtinger's claim that he was denied due process when he was placed in disciplinary detention for one day before he received the Incident Report.  He fails to show any violation of constitutional dimension in being removed from his cell and placed in disciplinary segregation for one day.  Moreover, the time that he spent in disciplinary segregation before the DHO hearing were credited to his 21-day disciplinary segregation sanction.

Accordingly, this Court concludes that Pachtinger has not demonstrated any denial of due process, and his claims in this regard will be denied for lack of merit.

2.  *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances.  The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover, the Court stated:  "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that

15

the DHO considered and relied upon the following evidence in its determination that petitioner committed the Prohibited Act 299, conduct which disrupts or interferes with the orderly running of the institution most like Code 205, engaging in a sexual act: (1) the reporting officer witnessed Inmate Boutilier under plaintiff's sheet in a fetal position at Pachtinger's groin area; and (2) Pachtinger admitted Boutilier was under the sheet, although not in the way the reporting officer noted.  The DHO reasoned from this evidence that, even if it did not prove that a sexual act had occurred, the incident of two men in bed together in the position as described by the officer can certainly be perceived as a sex act by others and has the potential to cause problems for petitioner, Boutilier and others; thus, it was disruptive to the orderly running of the institution.

    The DHO also noted that the reporting officer had nothing to gain by fabricating the charge, as suggested by Pachtinger, but Pachtinger had much to gain by having the incident report expunged.  Therefore, the DHO accorded more weight to the credibility of the officer.

    Thus, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary."  Hill, 472 U.S. at 457.  There was more than sufficient evidence to support the DHO finding that

Pachtinger had violated Code 299. He was not found guilty of violating Code 205, as originally charged.

Based upon this evidence as relied upon by the DHO, and without any sufficiently credible contradictory evidence submitted by petitioner, except his self-serving argument that he would not engage in a sexual act with another man and that the incident report was nothing more than a fabrication or retaliatory act based on Pachtinger's earlier complaint about another correctional officer, this Court finds that Pachtinger's right to due process was not violated by the determination of the DHO. The procedures enunciated in <u>Wolff</u>, supra, were complied with, and there was "some evidence", in accordance with <u>Hill</u>, <u>supra</u>, to support the DHO's finding of guilt. See <u>Sinde v. Gerlinski</u>, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting <u>Hill</u>, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Pachtinger has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding. Accordingly, this habeas petition will be denied for lack of merit.

17

**CONCLUSION**

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.

      s/Noel L. Hillman
    NOEL L. HILLMAN
    United States District Judge

At Camden, New Jersey
Dated:   April 30, 2009