**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SOLOMON PACHTINGER, | : | Civil No.: 08-4169 (NLH) |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| WARDEN JEFF GRONDOLSKY, | : | |
| | : | |
| Respondent. | : | |

**APPEARANCES:**

> SOLOMON PACHTINGER, Petitioner Pro Se
> #53151-054
> F.C.I. Fort Dix - West
> Unit 5812, P.O. Box 7000
> Fort Dix, NJ 08640
>
> JAMES B. CLARK, III, AUSA
> OFFICE OF THE U.S. ATTORNEY
> 970 Broad Street, Suite 700
> Newark, New Jersey 07102
> Counsel for Respondent

**HILLMAN**, District Judge

This matter comes before the Court upon the motion of pro se petitioner, Solomon Pachtinger ("Pachtinger") for reconsideration of this Court's April 30, 2009 Opinion and Order, which had denied with prejudice Pachtinger's petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pachtinger submitted his application for reconsideration on or about May 18, 2009.

(Docket Entry No. 14).[1]  The Respondent filed a letter in opposition to Pachtinger's motion on May 26, 2009.  (Docket Entry No. 15).

This motion is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons stated below, the motion will be denied.

## I.  BACKGROUND

In his habeas petition, Pachtinger challenges a December 4, 2007 prison disciplinary finding, which resulted in the loss of 27 days good conduct time ("GCT"), 21 days in disciplinary detention, and three months loss of visitation.  He seeks to have the incident report and disciplinary finding expunged, and to restore the 27 days loss of GCT.

Pachtinger is presently serving a 57-month prison sentence, and his projected release date is August 12, 2009, assuming he earns all GCT available to him.

The subject incident, which resulted in the loss of GCT, occurred on November 3, 2007, while Pachtinger was confined at FCI Otisville.[2]  The Incident Report stated that, at about 10:00 a.m., the reporting officer, Senior Officer Specialist R. Seigerman, was conducting rounds and observed Pachtinger lying on

_____

[1]  On the same date, May 18, 2009, Pachtinger also filed a Notice of Appeal.

[2]  Pachtinger was transferred to FCI Fort Dix, where he currently is confined, on January 15, 2008.

2

the top bunk in his cell with a sheet up to his neck with his arms spread out at his sides with another inmate. Seigerman reported that the other inmate was positioned at petitioner's groin level in the fetal position. When asked what the inmates were doing, both responded that they were "pranking."

Pachtinger was charged with a rules violation, namely, Code 205 violation, engaging in a sexual act. He was taken to the Special Housing Unit ("SHU") where he was strip searched and subjected to a medical inspection. An incident report was prepared that same day and provided to Pachtinger on November 4, 2007. Seigerman also prepared a memorandum of the incident on November 3, 2007, which was relied upon at the disciplinary hearing.

On November 6, 2007, Pachtinger appeared before the Unit Disciplinary Committee ("UDC") for a hearing. Based on the seriousness of the charge and potential sanctions, the matter was referred to the Disciplinary Hearing Officer ("DHO") for a hearing.

On November 8, 2007, the DHO, Officer J.M. Banks, conducted a hearing with petitioner present. Pachtinger was represented by the institution's chaplain, Rabbi Laskin. The DHO report contains a summary of Pachtinger's statement, which essentially alleged that he and his bunkmate were "pranking" and jostling around after Pachtinger came back from Chapel and climbed into

3

his bunk.  Pachtinger disputed Seigerman's description of the incident as a sex act, and claims that the physician's assistant did not find any evidence of a sexual act.  He also remarked that he had a problem with another cellmate in th past.  Finally he stated that wanted the camera to be reviewed to show this didn't happen.  (DHO Report at Section III.B, Attachment B to Declaration of Tara Moran ("Moran Decl.")).

No witnesses appeared at the DHO hearing, although Pachtinger requested that his cell mate, Inmate Boutilier, be called for testimony.  The DHO denied this request because Inmate Boutilier had already denied participating in a sex act and his presence at the hearing wasn't necessary because it would be the same testimony as petitioner.  (DHO Report at Section III.C.3).

The DHO relied on Pachtinger's statement, the Incident Report and Investigation, and Officer Seigerman's Memorandum dated November 3, 2007, in rendering his decision.  On December 4, 2007, the DHO issued his findings with respect to the November 3, 2007 incident.  Specifically, the DHO found as follows:

> The DHO finds on November 3, 2007, your [sic] participated in conduct that is disruptive or interferes with the orderly running of the institution most like being engaged in a sexual.

> Specific evidence relied on to support this finding is the incident report written by Officer Seigerman.  She states on October [sic] 3, 2007, at approximately 10:00 a.m., she was conducting the count on the 100 Range of Unit GB.  Upon reaching your cell, #119, she observed you lying on the top bunk under the sheet with your arms spread out to the sides. Inmate Boutilier was in a fetal position near your groin.

4

In her memorandum, Officer Seigerman further stated
Boutilier's head popped up when he heard her.  He attempted
to get up, but your legs were wrapped around his mid-
section.  Boutilier removed your legs from his mid-section
and stood up.  Officer Seigerman noted Boutilier's face was
flushed and she asked what the two of you were doing.  You
both stated it was a prank.  You offered the following
defense:  Around 9:30 a.m., I came back from the Chapel and
went to my room.  I climbed into bed and my bunky, who tends
to be juvenile, asked me if I was going to bed.  He said he
wasn't and climbed up on the stool and table.  He was trying
to pull me off and I started jostling around with him.  The
officer came by and asked what we were doing.  Boutilier
told her we were pranking around.  When she came back around
she asked again and Boutilier told her pranking around.
They took me to the Lieutenant's Office and the Lieutenant
asked me what we were doing and I told him nothing.  The way
she described it isn't logical.  If one would accept her
version of him being under the covers, What shows a sexual
act?  I don't know what her motivation would be.  I don't do
those kind of things.  I had a problem with another celly
who wrote on the mirror "Princess and I'm your daddy."  I
reported this.  I was examined by the P.A. and he didn't
find any evidence to a sex act.  I would like the camera to
be reviewed to show this didn't happen.  Your requested the
camera to be reviewed.  The DHO explain [sic] and you agreed
that this happened in your cell and your cell didn't have a
camera inside.  The DHO asked if inmate Boutilier was under
the sheet with you.  You said he was, but not like she
claimed.  You quickly tried to correct yourself and said it
was mostly his arms under the sheets.

Based on the incident report, supporting documentation and
your statement, the DHO has given greater weight to the
written report from the officer.  She documented that she
witnessed this and she would have nothing to gain by not
being truthful.  In fact, she has a responsibility to do so.
You would have much to gain by having this incident report
expunged.  Additionally, your statement helps to support the
facts in her report stating he was under the sheets with
you.  You and your staff representative made a good point
that the incident report doesn't detail you actually engaged
in a sexual act although this may be a reasonable inference
when two men are in bed together, under the sheets together
and positioned as she described, especially in a
correctional setting.  It is based on this the DHO informed
you he would be considering code 299.  As indicated, two men
in bed together, under a sheet and positioned as described

```
is disruptive to the security and orderly running of the
institution.  It is prohibited and could lead to other acts
of misconduct as it could also be perceived as a sex act by
other inmates and could cause problems between you,
Boutilier and or other inmates.  The DHO finds you have
committed Prohibited Act 299 - Conduct which Disrupts or
Interferes with the Orderly Running of the Institution Most
like Code 205 - Engaging in a Sexual Act.
```

(DHO Report at Section V).

After exhausting his administrative remedies, Pachtinger

filed this habeas petition.  He argued that he was denied

procedural due process in violation of the Fifth Amendment.

Specifically, he alleged (1) that he was denied the opportunity

to present witnesses in his defense, namely, Inmate Boutilier;

(2) that he was not provided a copy of Officer Seigerman's

November 3, 2007 memorandum relied upon by the DHO; (3) that the

DHO afforded unreasonable weight to the claims of the reporting

officer, which Pachtinger alleges are factually unsupportable;

and (4) that the DHO was not an impartial tribunal because he

presumed the reporting officer to be more credible than

Pachtinger.

Pachtinger also argued that the disciplinary action taken

was fabricated and retaliatory, intended to punish Pachtinger for

complaining about an earlier incident that had interfered with

his right to free exercise of religion, as guaranteed under the

First Amendment.  Specifically, Pachtinger alleged that, on or

about September 27, 2007, he was participating in group prayers

during Sukkot (Sabbath) when correctional officer, Ms. Liptock, "conducted an unannounced shakedown of the group." (Petition at ¶ 10). Pachtinger lodged a complaint against Liptock with her superior Captain White, and she was disciplined accordingly. Soon afterwards, Pachtinger heard rumors that he would suffer retaliation for complaining. (Id.).

The Respondent answered the petition on October 27, 2008, and submitted the relevant record for review. Respondent countered that there was no deprivation of due process and that there was sufficient evidence to support the disciplinary sanctions imposed.

In reviewing the matter, this Court found no violation of due process as alleged by Pachtinger. Pachtinger was provided with advance written notice of the charge against him, giving him sufficient time to prepare a defense for an appearance at the disciplinary hearing, call witnesses and present evidence. He also received a written statement by the DHO as to the evidence relied on and the reasons for the disciplinary sanctions. See Wolff v. McDonnell, 418 U.S. 539, 563-71 (1974); Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)

This Court also found no merit to Pachtinger's claims that he could not call a witness, that he was not permitted to review Seigerman's memorandum of the incident, and that the DHO ignored surveillance videotapes. The DHO clearly stated in his report

7

that petitioner's proposed witness, Inmate Boutilier, the roommate and partner at issue in the incident, was not necessary because the inmate's denial of engaging in a sexual act was accepted by petitioner and the DHO, and therefore, Boutilier's testimony would not add anything to the hearing to benefit Pachtinger.

The DHO also observed in the report that there were no video cameras inside Pachtinger's cell that would have shown petitioner and Boutilier.  Thus, there was no relevant video surveillance tapes, and Pachtinger conceded this point at the DHO hearing. (DHO Report at Section V).  As to Seigerman's memorandum, it was a short summary of the incident by Seigerman, the reporting officer, which does not differ in any substantial or relevant way from the Incident Report itself.  Consequently, Pachtinger was not deprived of any information, documentation or witnesses that would have aided his defense.

Further, this Court found no merit to Pachtinger's claim that he was denied due process when he was placed in disciplinary detention for one day before he received the Incident Report. Pachtinger failed to show any violation of constitutional dimension in being removed from his cell and placed in disciplinary segregation for one day.  Moreover, the time that he spent in disciplinary segregation before the DHO hearing were credited to his 21-day disciplinary segregation sanction.

Finally, this Court found that there was sufficient evidence to support the DHO's decision.  The DHO relied upon the following evidence in its determination that petitioner committed the Prohibited Act 299, conduct which disrupts or interferes with the orderly running of the institution most like Code 205, engaging in a sexual act:[3]  (1) the reporting officer witnessed Inmate Boutilier under plaintiff's sheet in a fetal position at Pachtinger's groin area; and (2) Pachtinger admitted Boutilier was under the sheet, although not in the way the reporting officer noted.  The DHO reasoned from this evidence that, even if it did not prove that a sexual act had occurred, the incident of two men in bed together in the position as described by the officer can certainly be perceived as a sex act by others and has the potential to cause problems for petitioner, Boutilier and others; thus, it was disruptive to the orderly running of the institution.

The DHO also noted that the reporting officer had nothing to gain by fabricating the charge, as suggested by Pachtinger, but Pachtinger had much to gain by having the incident report expunged.  Therefore, the DHO accorded more weight to the credibility of the officer.

---

[3]  The DHO found Pachtinger not guilty of violating Code 205 (engaging in a sexual act), as originally charged.

In his motion for reconsideration, Pachtinger argues that this Court did not address all of his claims individually.  He states that the Court did not make findings of fact concerning the following allegations:

First, Pachtinger argues that this Court did not make any findings of fact with respect to his claim of retaliation and collusion.  Namely, Pachtinger claims that the incident report was fabricated because he had filed a complaint against Officer Liptock, on September 27, 2007, a little more than one month before the incident report occurred.  Officer Liptock was there at the time of the alleged incident on November 3, 2007.

Next, Pachtinger contends that the Court did not consider relevant evidence.  In particular, Pachtinger again argues that the video recording from the nearby camera should have been provided.  He states in his motion that the video camera would have shown the activity of Officer Seigerman and Officer Liptock outside of Pachtinger's cell at all times before the incident and afterwards.  It also would account for the time between Pachtinger's return to his cell and the arrival of Officer Seigerman for the count.  Pachtinger mistakenly contends that this Court ordered the Respondent to provide the video recordings.  Pachtinger also complains that he did not receive a copy of Seigerman's November 3, 2007 memorandum until Respondent answered the petition, and that the memorandum differs from the

10

incident report with respect to the state of undress and positioning of petitioner and his cellmate.

Third, Pachtinger argues that his cellmate, Inmate Boutilier, could have provided independent corroboration of the incident consistent with Pachtinger.

Fourth, Pachtinger alleges that Respondent failed to verify that he was threatened by Lieutenant T. Johnson; that Pachtinger was called a "fag" by Counselor Gusher and was physically restrained by officers when he attempted to show them what had transpired; and that as an orthodox Jew, Pachtinger suffered numerous humiliations in disciplinary confinement, such as denial of Kosher meals, female officers escorting him half-naked to the showers, and anti-Semitic remarks by staff.

Pachtinger also argues that the Court did not provide conclusions of law for the legal issues he raised in his petition, as to the following;

First, Pachtinger argues that the finding by the DHO that a Code 205 violation was not sustainable should have automatically excluded the DHO from finding that Pachtinger had committed a Code 299 violation.

Second, Pachtinger mistakenly argues that this Court did not address the issue that Respondent failed to comply with this Court's order that the video tape evidence be provided.

11

Third, Pachtinger contends that the Court did not make any conclusions of law with respect to the BOP's exclusion of Boutilier as a witness at the DHO hearing.  Specifically, Pachtinger argues that the exclusion can only be based on concerns for institutional safety.

Fourth, Pachtinger again complains that he never received a copy of Seigerman's November 3, 2007 memorandum, and that this Court did not address this denial of due process claim.

Finally, Pachtinger seems to suggest that the Court misapplied the "some evidence" standard under <u>Superintendent v. Hill</u>, 472 U.S. 445, 454-55 (1985), because Pachtinger was denied evidence and a witness, and uncorroborated testimony was used by the DHO to reach its decision.

## II.  <u>**ANALYSIS**</u>

Motions for reconsideration are not expressly recognized in the Federal Rules of Civil Procedure.  <u>United States v. Compaction Sys. Corp.</u>, 88 F. Supp.2d 339, 345 (D.N.J. 1999). Generally, a motion for reconsideration is treated as a motion to alter or amend judgment under Fed.R.Civ.P. 59(e), or as a motion for relief from judgment or order under Fed.R.Civ.P. 60(b).  <u>Id</u>. In the District of New Jersey, Local Civil Rule 7.1(I) governs motions for reconsideration.  <u>Bowers v. Nat'l. Collegiate Athletics Ass'n.</u>, 130 F. Supp.2d 610, 612 (D.N.J. 2001).

12

Local Civil Rule 7.1(I) permits a party to seek reconsideration by the Court of matters "which [it] believes the Court has overlooked" when it ruled on the motion.  L. Civ. R. 7.1(I); see NL Industries, Inc. v. Commercial Union Insurance, 935 F. Supp. 513, 515 (D.N.J. 1996).  The standard for reargument is high and reconsideration is to be granted only sparingly.  See United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  The movant has the burden of demonstrating either: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)(citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter.  Compaction Sys. Corp., 88 F. Supp.2d at 345; see also L.Civ.R. 7.1(I).  "The word 'overlooked' is the operative term in the Rule."  Bowers, 130 F. Supp.2d at 612 (citation omitted); see also Compaction Sys. Corp., 88 F. Supp.2d at 345.

Ordinarily, a motion for reconsideration may address only those matters of fact or issues of law which were presented to, but not considered by, the court in the course of making the

13

decision at issue.  See SPIRG v. Monsanto Co., 727 F. Supp. 876, 878 (D.N.J.), aff'd, 891 F.2d 283 (3d Cir. 1989).  Thus, reconsideration is not to be used as a means of expanding the record to include matters not originally before the court. Bowers, 130 F. Supp.2d at 613; Resorts Int'l. v. Greate Bay Hotel and Casino, Inc., 830 F. Supp. 826, 831 & n.3 (D.N.J. 1992); Egloff v. New Jersey Air National Guard, 684 F. Supp. 1275, 1279 (D.N.J. 1988).  Absent unusual circumstances, a court should reject new evidence which was not presented when the court made the contested decision.  See Resorts Int'l, 830 F. Supp. at 831 n.3.  A party seeking to introduce new evidence on reconsideration bears the burden of first demonstrating that evidence was unavailable or unknown at the time of the original hearing.  See Levinson v. Regal Ware, Inc., Civ. No. 89-1298, 1989 WL 205724 at *3 (D.N.J. Dec. 1, 1989).

     Moreover, L.Civ.R. 7.1(I) does not allow parties to restate arguments which the court has already considered.  See G-69 v. Degnan, 748 F. Supp. 274, 275 (D.N.J. 1990).  Thus, a difference of opinion with the court's decision should be dealt with through the normal appellate process.  Bowers, 130 F. Supp.2d at 612 (citations omitted); Florham Park Chevron, Inc. v. Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988); see also Chicosky v. Presbyterian Medical Ctr., 979 F. Supp. 316, 318 (D.N.J. 1997); NL Industries, Inc. v. Commercial Union Ins. Co.,

14

935 F. Supp. 513, 516 (D.N.J. 1996) ("Reconsideration motions ... may not be used to re-litigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").  In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple."  Tischio v. Bontex, Inc., 16 F. Supp.2d 511, 533 (D.N.J. 1998)(citation omitted).

Here, Pachtinger fails to provide any evidence to show that this Court "overlooked" a factual or legal issue that may alter the disposition of the matter, which is necessary for the Court to entertain the motion for reconsideration.  Rather, it is evident that Pachtinger simply disagrees with this Court's assessment of the claims asserted in the habeas petition, and this Court's finding that there was sufficient evidence to support the DHO's findings.

In particular, this Court expressly found that there were no due process violations as contemplated under Wolff and Von Kahl. The DHO considered the relevant evidence and determined that any video recordings would not be relevant because it would not show the activity of the inmates in their cell.  This Court agreed with the DHO's determination in this regard.  The relevant issue was the conduct of Petitioner and not that of the reporting officer and Officer Liptock.

15

Likewise, there was no need for independent corroboration by inmate Boutilier because the DHO accepted Pachtinger's statement that no sexual act had occurred.  Pachtinger's suggestion that Boutilier could corroborate the times Seigerman and Liptock were present adds nothing to dispute the charge that Pachtinger was engaged in conduct that would disrupt or interfere with the orderly running of the institution.  In addition, this Court acknowledged in its Opinion that the November 3, 2007 memorandum was found to be substantially similar to the Incident report, and therefore, Pachtinger was not deprived of any information, documentation or witnesses that would have aided his defense.

Finally, Pachtinger's claims of retaliatory conduct by Officer Liptock, and the threats, sexual and anti-Semitic remarks, and denial of Kosher meals are not relevant to petitioner's challenge to the DHO findings and imposition of sanctions as to the Code 299 violation.  To the extent that Pachtinger alleges that these acts occurred, he may bring a Bivens[4] claim for damages.  Nevertheless, the issue of fabrication of the charge, based on retaliation for Pachtinger bringing a claim against another officer, was considered and rejected by this Court in its Opinion.  Specifically, this Court accepted the DHO's finding that the reporting officer had nothing

---

[4]   Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

16

to gain by fabricating the charge but Pachtinger had much to gain by having the incident report expunged.  Consequently, the DHO accorded more weight to the credibility of Officer Seigerman, which credibility determination this Court declined to disturb.

As to the conclusions of law that Pachtinger contends this Court overlooked, such arguments have no merit.  There is no legal basis for concluding, as argued by Pachtinger, that a finding of no support for the more serious charge of an actual sexual act negates a finding of guilt on the less serious charge that Pachtinger engaged in some conduct that was disruptive to the orderly running of the institution.  It is plain to this Court that petitioner does not seem to grasp that the DHO's determination that there was insufficient evidence to support the Code 205 violation (sexual act) would not contradict a finding that he was nevertheless engaged in disruptive behavior.  The DHO explained quite clearly that the conduct of two men in bed together, under a sheet and positioned as described is disruptive because it could lead to other acts of misconduct or be perceived as a sex act and cause problems for both Pachtinger and his cellmate.  Moreover, it seems that Pachtinger may be confusing the logic that a finding of non-guilt on the lesser, broader charge would necessarily negate a finding of guilt on the more serious and specific charge, but not vice versa.  In any event, this Court considered and rejected petitioner's legal argument.

17

Next, Pachtinger continues to press the issue that he should have been allowed to call Boutilier as a witness.  He argues that the only way the witness could have been excluded was if there were concerns for institutional safety.  This Court does not have to make that determination.  It was clear from the DHO report that inmate Boutilier would add nothing to clear Pachtinger of the Code 299 violation.  Boutilier would corroborate Pachtinger's statement that no sex act occurred, but Pachtinger himself admitted that the two were "pranking", and that conduct as it was perceived, two men in bed together, jostling as petitioner contends, is sufficient to support the Code 299 violation.  The DHO did not deprive Pachtinger of any due process by excluding Boutilier from corroborating petitioner's statement, which the DHO already had accepted as not being enough to support a charge of engaging in a sexual act.

As to the claim that this Court ordered Respondent to produce the video tape evidence, Pachtinger is mistaken.  There was no Order directing that such evidence be provided.  This Court's Order directing Respondent to answer and provide the relevant record cannot be construed as compelling Respondent to produce something that the DHO expressly found to be irrelevant to the matter.  As explained earlier in this Opinion, the video tape would be relevant if it showed the conduct of the two inmates.  Pachtinger admits that the video tape would show only

18

the officers outside of the cell, and that is not relevant to whether Pachtinger was engaging in conduct disruptive to the institution inside of his cell.

Likewise, the issue of the November 3, 2007 memorandum has been addressed, and whether or not Pachtinger actually received it would not change this Court's ultimate determination that he had received all the process to which he was due before and during his DHO hearing.

Finally, this Court found that there was sufficient evidence to support the disciplinary charge against Pachtinger, and therefore, met the "some evidence" standard set forth in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985). Pachtinger's argument that this Court "misapplied" the "some evidence" standard is nothing more than a disagreement with this Court's ruling.

Consequently, Pachtinger fails to satisfy the threshold for granting a motion for reconsideration. He has not presented the Court with changes in controlling law, factual issues that were overlooked, newly discovered evidence, or a clear error of law or fact that would necessitate a different ruling in order to prevent a manifest injustice. Rather, Pachtinger simply disagrees with this Court's determination that there were no due process violations and that there was sufficient evidence to support the DHO's finding that Pachtinger committed the Code 299

violation.   Therefore, Pachtinger's only recourse, if he disagrees with this Court's decision, should be via the normal appellate process.   He may not use a motion for reconsideration to re-litigate a matter that has been thoroughly adjudicated by this Court.

### III. <u>CONCLUSION</u>

Therefore, for the reasons expressed above, Pachtinger's motion for reconsideration (docket entry no. 14) will be denied for lack of merit.   An appropriate Order follows.

<u>   /s/ NOEL L. HILLMAN   </u>
NOEL L. HILLMAN
United States District Judge

At Camden, New Jersey
Dated: July 21, 2009